IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

KEITH CRONIN                                                                 PLAINTIFF

v.                                      NO. 3:17-CV-321-BD

SOCIAL SECURITY ADMINISTRATION                                DEFENDANT

MEMORANDUM OPINION AND ORDER

Keith Cronin applied for social security disability benefits with an alleged onset date of August 15, 2011. (R. at 47). The administrative law judge (ALJ) held a hearing and denied his application (R. at 20), and the Appeals Council denied his request for review. (R. at 1). Mr. Cronin requested judicial review, and the court reversed and remanded the case for further action. (R. at 412–22).

After a second hearing, the ALJ again denied Mr. Cronin's application. (R. at 374). The Appeals Council again denied review. (R. at 355). Mr. Cronin filed this case again requesting judicial review. The parties have consented to the jurisdiction of the magistrate judge.

I.  The Commissioner's Decision

The ALJ found that Mr. Cronin had the following severe impairments: borderline intellectual functioning, learning delays, schizoaffective disorder, mood disorder, personality disorder, and an anxiety disorder. (R. at 367). The ALJ considered Mr. Cronin's impairments under listings 12.03, 12.04, 12.08, and 12.11 and found that they did not meet or medically equal any of those listings. (R. at 368–69).

The ALJ found that Mr. Cronin had the residual functional capacity to perform work at all exertional levels, but that he would be limited to simple, routine, and repetitive tasks that require only incidental interpersonal contact and simple, direct, and concrete supervision. (R. at 25). The ALJ took testimony from a vocational expert (VE), who testified that the RFC would allow Mr. Cronin to perform his past relevant work as a material mixer. (R. at 372). The VE further testified that Mr. Cronin could perform other jobs such as dishwasher or cook's helper. (R. at 373). The ALJ held, therefore, that Mr. Cronin was not disabled. (R. at 373).

## II. Discussion

In this appeal, the Court must review the Commissioner's decision for legal error and assure that the decision is supported by substantial evidence on the whole record. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). Stated another way, the decision must rest on enough evidence that "a reasonable mind would find it adequate to support [the] conclusion." *Halverson*, 600 F.3d at 929. The Court will not reverse the decision, however, solely because there is evidence to support a conclusion different from that reached by the Commissioner. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

Mr. Cronin argues that the ALJ failed to consider whether he met the criteria for listing 12.05. He also argues that the RFC assigned by the ALJ is not supported by substantial evidence on the record as a whole.

The record includes the results of two IQ tests administered to Mr. Cronin. In the first, Vickie Caspall, Ph.D., found that Mr. Cronin had a full-scale IQ of 61, verbal comprehension score of 66, perceptual reasoning score of 67, working memory score of 65, and processing speed score of 68. (R. at 346). Dr. Caspall opined that the scores were not consistent with a diagnosis of mental retardation due to other factors affecting performance. (R. at 347–48). Nevertheless, Dr. Caspall felt that the results were valid. (R. at 350).

In the second test, Kenneth Hobby, Ph.D., found that Mr. Cronin had a full-scale IQ of 68, verbal comprehension score of 66, perceptual reasoning score of 84, working memory score of 71, and a processing speed score of 68. (R. at 689). Dr. Hobby indicated that the IQ results were probably reliable and that the overall examination was valid. (R. at 691, 696).

> Listing 12.05B requires the following:
>
> B. Satisfied by 1, 2, and 3 (see 12.00H):
>
> 1. Significantly subaverage general intellectual functioning evidenced by a or b:
>
> a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>
> b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
>
> 2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

> a. Understand, remember, or apply information (see 12.00E1); or
>
> b. Interact with others (see 12.00E2); or
>
> c. Concentrate, persist, or maintain pace (see 12.00E3); or
>
> d. Adapt or manage oneself (see 12.00E4); and
>
> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Clearly, Mr. Cronin's IQ tests met the requirements of 12.05B(1). This should have alerted the ALJ to consider listing 12.05. To the extent that he did not specifically consider listing 12.05, it is possible that the ALJ erred. The ALJ considered Mr. Cronin's limitations in mental functioning, however, in considering the other listings, and found moderate limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentration, persistence, or pace; and mild limitations in adapting or managing himself. (R. at 368).

Mr. Cronin argues that the ALJ failed to make a finding concerning his adaptive functioning as required by 12.05B(2), but the required deficits in adaptive functioning must be demonstrated by *extreme* limitation in one or *marked* limitation in two of the areas of mental functioning that the ALJ did consider. For that reason, the ALJ's decision includes findings that would make it impossible for Mr. Cronin to satisfy the requirements of listing 12.05. While it would have been preferable for the ALJ to have

4

specifically considered listing 12.05, any error in omitting such a discussion is harmless because factual findings that the ALJ did make were equally applicable to listing 12.05.

Mr. Cronin also argues that the ALJ's RFC is not supported by substantial evidence on the record as a whole because the record demonstrates that he has greater limitations and because the ALJ failed to discuss his Global Assessment of Functioning (GAF) scores.

Dr. Hobby opined that Mr. Cronin could "respond adequately to work pressure in an . . . appropriate work-like setting with nonverbal tasks that did not involve complex memory or fast processing speed, and where he didn't have to work closely with other people, if he was motivated." (R. at 364). He observed no difficulty in Mr. Cronin's ability to attend and sustain concentration. He opined that Mr. Cronin should be able to persist on work-like tasks for at least part of an eight-hour day and that he worked at a normal pace for basic work-like tasks. (R. at 695). During treatment, Mr. Cronin reported no serious problems, handling symptoms well, and medication compliance and effectiveness. (R. at 577, 581, 591).

"It is not the role of this court to reweigh the evidence presented to the ALJ or to try the issue in this case *de novo*." *Loving v. Dep't of Health & Human Servs., Sec'y*, 16 F.3d 967, 969 (8th Cir. 1994). The Court's role is to balance the evidence supporting the ALJ's decision against that which fairly detracts from those findings. *Id.* Considering Dr. Hobby's opinion and Mr. Cronin's statements during therapy, together with the totality of the evidence in the record, the limitations found by the ALJ fairly accounted for Mr. Cronin's medically determinable impairments.

Mr. Cronin argues that the ALJ failed to consider his GAF scores in assessing his RFC. Mr. Cronin had a GAF score of 49 on May 21, 2013; 51–60 on July 31, 2013; 50 on August 5, 2013; and 51 on September 30, 2013. (R. at 325, 348, 653, 662). According the DSM-IV, scores of 41–50 indicate serious symptoms, while scores of 51–60 indicate moderate symptoms. Mr. Cronin correctly notes that GAF scores should be considered. *Pate-Fires v. Astrue*, 564 F.3d 935, 944–45 (8th Cir. 2009). While the ALJ did not discuss these scores in the decision, all of Mr. Cronin's scores are from a five-month period. Subsequent medical records and opinions, discussed above, indicate improvement in symptoms and the ability to work. There is no extensive history of GAF scores here as was in *Pate-Fires*. With such a small sample of GAF scores and considering the other evidence in the record that more directly addresses Mr. Cronin's capabilities, any error the ALJ committed by failing to specifically discuss the GAF scores was harmless. The overall evidence is sufficient to support the ALJ's decision.

### III. Conclusion

A reasonable mind would find that the evidence is adequate to support the ALJ's decision. The decision of the ALJ, therefore, is hereby AFFIRMED.

SO ORDERED, this 14th day of November, 2018.

_____
UNITED STATES MAGISTRATE JUDGE